UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE NGUYEN,<br><br>                          Plaintiff,<br>  vs.<br><br>QUALCOMM, INC.,<br><br>                         Defendant. | CASE NO. 09CV1925-MMA (CAB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. No. 23) |

Plaintiff Christine Nguyen ("Nguyen") filed a complaint asserting claims for discrimination and harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"), and common law claims for assault and battery. (Doc. No. 1.) Before the Court is Defendant Qualcomm Inc.'s ("Qualcomm") Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. (Doc. No. 23.) For the following reasons, the Court **GRANTS** Qualcomm's motion in its entirety.

### BACKGROUND

This action arises from events surrounding Nguyen's employment with Qualcomm. The following facts are not reasonably in dispute. In 2008, Nguyen applied for a position at Qualcomm. Joseph Stanton, a manager for Qualcomm's engineering resources lab, interviewed Nguyen and recommended to his supervisor, Chad Heslop, that Nguyen be hired. Heslop extended an offer to Nguyen to work in Qualcomm's engineering resources lab as a Lab Technician, Sr. Nguyen accepted, and began working for Qualcomm on March 3, 2008. (*Def.'s Stmt. Undisp.*

*Facts*, Fact Nos. 1-4, Doc. No. 23-2.)

As a Lab Technician, Sr., Nguyen's primary duty was to run functionality tests on circuit boards. This included recording data, running tests, and tuning circuit boards. The boards are used by internal Qualcomm customers to test and run Qualcomm products.

Within the first four months of Nguyen's employment, Qualcomm identified issues regarding her performance at work. For example, Nguyen's supervisor, Stanton, instructed her not to make changes to the circuit boards. Nguyen acknowledged that her only job duties were to collect data, test, and tune the circuit boards. (*Pl.'s Resp. to Def.'s Stmt. Undisp. Facts*, Fact No. 3, Doc. No. 67-1.) Nonetheless, Nguyen made changes to circuit boards by soldering inductors on the boards. (*Def.'s Stmt. Undisp. Facts*, *citing* Def's Exh. A, Nguyen Depo. 155:20-157:8.) When Stanton discussed this issue with Nguyen, she responded that she was saving the customer time by soldering the inductors on herself. (Nguyen Depo. 155:20-157:8; Pl.'s Oppo. Exh. E; Stanton Decl. ¶ 11.) Nguyen's actions generated further delays for the customers. Stanton removed the soldering station from the engineering resources lab to prevent Nguyen from making changes to the circuit boards. (Id.)

During her employment with Qualcomm, Nguyen reported to her supervisor and to Human Resources that she believed her co-workers were mistreating her by laughing at her, talking behind her back, and sabotaging her work. (Bonofiglio Decl. ¶ 9; Rich Decl. ¶ 4; Nguyen Depo: 39: 17-24.) When a Human Resources representative asked Nguyen to provide information regarding who was talking about her and what was said, so that Human Resources could investigate further, Nguyen did not provide further information. (Rich Decl. ¶¶ 4, 8.) Nguyen also made a general request to transfer positions within Qualcomm, but did not apply for any specific position. (*Pl.'s Resp. to Def.'s Stmt. Undisp. Facts*, Fact No. 15, Doc. No. 67-1.)

On July 18, 2008, Qualcomm placed Nguyen on a Performance Improvement Plan ("PIP") to address Nguyen's performance issues. A PIP is an individualized, goal-oriented plan that Qualcomm creates to assist employees who struggle to perform their job duties. Nguyen's PIP identified three areas for improvement: (1) taking responsibility for her work; (2) improving technical skills to a proficient level; and (3) communicating more productively with other

1 members of her team.  Julie Bonofiglio, a Human Resources Generalist, scheduled meetings with
2 Nguyen on a regular basis to review her progress on the PIP.  (*Pl.'s Resp. to Def.'s Stmt. Undisp.*
3 *Facts*, Fact No. 8, Doc. No. 67-1.)  Nguyen declined to attend at least one PIP meeting.  (Nguyen
4 Depo. 190:17-191:18; Def.'s Exh. G.)  On August 20, 2008, Joseph Stanton, Chad Heslop, and
5 Julie Bonofiglio arranged a meeting, and informed Nguyen that her employment with Qualcomm
6 was terminated.  (*Def.'s Stmt. Undisp. Facts*, Fact No. 10, Doc. No. 23-2.)

7 <center>**PROCEDURAL BACKGROUND**</center>

8       On September 3, 2009, Plaintiff, proceeding *pro se*, filed a complaint.  (Doc. No. 1.)
9 Defendant answered on October 13, 2009.  (Doc. No. 6.)  On August 20, 2010, Defendant filed a
10 motion for summary judgment.  (Doc. No. 23.)  Between August 27, 2010 and September 7, 2010,
11 Plaintiff filed a series of documents, which the Court rejected because the filings lacked proofs of
12 service.  (Doc. Nos. 24-29.)  On September 9, 2010, Plaintiff filed another series of documents and
13 attached proofs of service, which the Court accepted and intended to construe the documents as
14 her opposition.  (Doc. Nos. 34-37.)  In light of Plaintiff's late opposition filing, the Court issued an
15 order resetting Defendant's deadline to file a reply, and indicated its intention to take the matter
16 under submission pursuant to Civil Local Rule 7.1.d.1.  (Doc. No. 38.)  On September 17, 2010,
17 Defendant filed its reply.  (Doc. No. 45.)  On September 17, 2010, the Court deemed the matter
18 under submission.

19       On November 3, 2010, Plaintiff filed a request to substitute Joel Golden as her attorney of
20 record in place and stead of herself.  (Doc. No. 54.)  The Court granted Plaintiff's request to
21 substitute counsel.  Plaintiff filed an *ex parte* request to extend time to complete discovery and file
22 a response to Defendant's motion for summary judgment.  (Doc. No. 59.)

23       The Court granted Plaintiff's request to file an additional opposition, and accordingly
24 granted Defendant an opportunity to file an additional reply.  The Court denied Plaintiff's request
25 to reopen discovery, but indicated it may consider future requests after the motion for summary
26 judgment matter was fully briefed.  (Doc. No. 64.)  On December 13, 2011, instead of filing her
27 opposition, Plaintiff filed a Rule 56(f) request to continue the summary judgment hearing and to
28 extend time for discovery, or in the alternative, an extension of time to file an opposition.  (Doc.

1  No. 65.) The Court denied Plaintiff's request, but granted another extension of time to file an
2  opposition. (Doc. No. 66.) On December 16, 2010, Plaintiff filed her operative opposition. (Doc.
3  No. 76.) On January 10, 2011, Defendant filed its operative reply. (Doc. No. 70.) On January 10,
4  2011, the Court retook the matter under submission.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

6  A party is entitled to summary judgment under Federal Rule of Civil Procedure 56(c) "if
7  the pleadings, depositions, answers to interrogatories, and admissions on file, together with the
8  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving
9  party is entitled to a judgment as a matter of law." *Hubbard v. 7-Eleven*, 433 F. Supp. 2d 1134,
10  1139 (S.D. Cal. 2006) (citing FED. R. CIV. P. 56(c)(2)). On a motion for summary judgment,
11  "[t]he moving party bears the initial burden to demonstrate the absence of any genuine issue of
12  material fact." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (citation
13  omitted). "Once the moving party meets its initial burden, . . . the burden shifts to the nonmoving
14  party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that
15  there is a genuine issue for trial." *Id*.

16  A "mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion
17  for summary judgment; instead, the nonmoving party must introduce some 'significant probative
18  evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d
19  1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). Thus, in opposing a
20  summary judgment motion, the non-moving party may not simply show that there is some
21  "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
22  475 U.S. 574, 586 (1986) (citations omitted). However, when assessing the record to determine
23  whether there is a "genuine issue for trial," the Court must "view the evidence in the light most
24  favorable to the nonmoving party, drawing all reasonable inferences in [her] favor." *Horphag*, 475
25  F.3d at 1035 (citation omitted). On summary judgment, the Court may not make credibility
26  determinations; nor may it weigh conflicting evidence. *See Anderson*, 477 U.S. at 255. The
27  ultimate question on a summary judgment motion, as framed by the Supreme Court, is whether the
28  evidence "presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

## DISCUSSION

**A.     Plaintiff's Request to Reopen Discovery**

The deadline for conducting discovery in this case was July 2, 2010, with the exception of the expert reports and expert depositions deadline dates, which were extended until two weeks after the Court issues a ruling on Defendant's Motion for Summary Judgment, provided the ruling does not render the deadline obsolete. (Doc. Nos. 16, 21.) On November 3, 2010, Plaintiff filed an *ex parte* motion seeking an extension of time to complete discovery. (Doc. No. 59.) On December 13, 2011, Plaintiff filed a Rule 56(f) request to continue the summary judgment hearing and extend the time for discovery. (Doc. No. 65.)

As an initial matter, Plaintiff's requests to reopen discovery are untimely. "[T]he process of evaluating a summary judgment motion would be flouted if requests for more time [and] discovery . . . had to be considered even if requested well after the deadline set for the introduction of all information needed to make a ruling has passed." *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 520 (9th Cir. 1990). "Thus, implication and logic require that a Rule 56(f) motion be made prior to the summary judgment hearing." *Id*. Here, Plaintiff made her request to reopen discovery two months *after* the scheduled summary judgment hearing date, and well after the matter had been deemed under submission to be decided on the papers already submitted to the Court.

Further, in determining whether to reopen discovery, "[d]istrict courts have 'wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion." *Cromwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1026 (9th Cir. 2006) (citations omitted). The Ninth Circuit "decline[s] to limit the district court's ability to control its docket by enforcing a discovery termination date, even in the face of requested supplemental discovery that might have revealed highly probative evidence, when the plaintiff's prior discovery efforts were not diligent." *Id*. at 1027.

Here, even though Plaintiff's Rule 56(f) request indicates additional discovery may reveal highly probative evidence, Plaintiff has not demonstrated her prior discovery efforts were diligent. From the Court's review of the record, Plaintiff had an ample five months of opportunity to

1 conduct discovery. Plaintiff concedes that during the period in which she had the opportunity to
2 conduct discovery, she did not do so. (Doc. No. 65.) The Court finds Plaintiff's lack of diligence
3 in conducting discovery weighs heavily against reopening discovery. *See Cromwell*, 439 F.3d at
4 1026 (*citing Panatronic USA v. AT &T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002) (court did not
5 abuse its discretion in denying request to reopen discovery where plaintiff had "ample
6 opportunity" to conduct discovery but failed to do so).

7    Plaintiff's counsel avers that Nguyen's lack of legal training and knowledge did not
8 provide her with the opportunity to discover information. The Court disagrees. Plaintiff's *pro se*
9 status did not foreclose her opportunity to conduct discovery. "[P]ro se litigants in the ordinary
10 civil case should not be treated more favorably than parties with attorneys of record." *Jacbson v.*
11 *Filler,* 790 F.2d 1362, 1364-67 (9th Cir. 1986)**.**

12    In *Jacobsen*, the defendant filed a summary judgment motion, and the *pro se* plaintiff did
13 not respond with a written opposition, nor did he submit admissible evidence. The Ninth Circuit
14 affirmed the district court's grant of summary judgment, and declined to extend a rule requiring
15 courts to advise non-incarcerated litigants of measures that should be taken to oppose a summary
16 judgment motion. The Ninth Circuit noted that Rule 56(e) apprises *pro se* litigants of their
17 summary judgment obligations, and the rule makes clear that a response to a motion for summary
18 judgment "must set forth specific facts, either by way of affidavit or by the other means specified
19 in the rule (depositions, answers to interrogatories, sworn or certified copies of papers). . . ." *Id.* at
20 1366, fn. 11 (discussing FED. R. CIV. P. 56). Consequently, irrespective of her prior *pro se* status,
21 Plaintiff had ample opportunity to conduct discovery. In consideration of the procedural posture
22 of the case, the Court's need to control its docket, Plaintiff's lack of diligence in conducting
23 discovery when she had the opportunity to do so, and that her *pro se* status does not affect such
24 lack of diligence, the Court declines to reopen discovery.

25 **B.    Objections to Plaintiff's Evidence**

26    Defendant objects to portions of Plaintiff's declaration, arguing some portions should be
27 excluded on grounds that they lack foundation and/or contradict her earlier deposition. (Doc. No.
28 70-1.) "As a general rule, an affidavit submitted in response to a motion for summary judgment

1  which contradicts earlier sworn testimony without explanation of the difference does not
2  automatically create a genuine issue of material fact." *Scamihorn v. General Truck Drivers*, 282
3  F.3d 1078, 1086 fn.7 (9th Cir. 2002).  However, the Ninth Circuit has instructed that district courts
4  must first "make a factual determination that the contradiction was actually a 'sham.'" *Kennedy v.*
5  *Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991).  To determine whether the affidavit is a
6  "sham," district courts may look to whether the non-moving party's affidavit is "elaborating upon,
7  explaining or clarifying prior testimony elicited by opposing counsel on deposition [and] minor
8  inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence
9  afford no basis for excluding an opposition affidavit." *Messick v. Horizon Industries, Inc.*, 62 F.3d
10 1227, 1231 (9th Cir. 1995).  With these principles in mind, the Court addresses each of
11 Defendant's objections.

12     Defendant's Objection Number One is **OVERRULED.**  Plaintiff's statement is founded on
13 her own personal knowledge of her perception as a lay witness of her job performance.
14 Defendant's Objection Number Two is **OVERRULED.**  Plaintiff's statement is founded on her
15 own personal knowledge of her perception as a lay witness of her interactions with her co-workers.
16 Defendant's Objection Number Three is **SUSTAINED**.  Plaintiff's statement that she did not
17 make any changes to the circuit boards contradicts her prior sworn testimony that she soldered
18 inductors onto the circuit boards, and does not elaborate, explain, or clarify her prior testimony.
19 (*See* Nguyen Depo. 155:20-157:8.)  Defendant's Objection Number Four is **SUSTAINED**.
20 Plaintiff's statement that she did not intentionally miss a PIP meeting contradicts her prior sworn
21 testimony that she informed Bonofiglio via email that she would not attend a PIP meeting, and
22 does not elaborate, explain, or clarify her prior testimony.  (*See* Nguyen Depo. 190:17-191:18;
23 Def.'s Exh. G (email from Nguyen to Bonofiglio declining PIP meeting).)  Defendant's Objection
24 Number Five is **OVERRULED.**  Plaintiff's statement is founded on her own personal knowledge
25 of her perception as a lay witness of her job performance.

26
27
28 / / /

**B.     Title VII Claims**

Plaintiff brings a Title VII discrimination claim and a Title VII harassment claim on the basis of race, national origin, and gender.[1, 2] (Compl. ¶ 1.) Defendant contends Plaintiff's Title VII claims cannot survive summary judgment because among other reasons, she failed to exhaust her administrative remedies.

    1.     <u>Exhaustion of Administrative Remedies</u>

Before a plaintiff may bring a lawsuit under Title VII, a plaintiff must first exhaust the administrative remedies available to him or her under section 2000e-5. To exhaust administrative remedies, a plaintiff must file a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the alleged unlawful employment practice. Or, if the plaintiff first institutes proceedings with a state or local agency authorized to grant or seek relief upon such issues, the limitations period is extended to 300 days from the date of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(f)(1); *Draper v. Couer Rochester, Inc.*, 147 F.3d 1104, 1107 (9th Cir. 1998). After a plaintiff receives a right-to-sue letter or becomes eligible to sue after the requisite period of inaction by the EEOC, he or she may then file suit. A plaintiff's failure to exhaust the administrative remedies requirements "renders a suit subject to dismissal in the absence of any equitable consideration to the contrary." *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1998).

The requirement to file a discrimination charge with the EEOC can be met by filing a claim with a state agency that has a "worksharing agreement" with the EEOC, which allows the state agency to be "the agent of the EEOC for the purpose of receiving . . . charges." *Steifel v. Bechtel Corp.*, 624 F.3d 1240, 1244 (9th Cir. 2010) (internal marks and citation omitted). If a person files a charge with a state agency that has a worksharing agreement with the EEOC, after the person

---

[1] Plaintiff's complaint only asserts race and national origin as the bases for her Title VII claims. Defendant interprets Plaintiff's claims as also based on gender (*Def.'s Motn. for Summ. J.* at 8), and Plaintiff's opposition papers also contend her claims are based on gender (*Pl.'s Oppo.* at 13, 15). The Court construes Plaintiff's complaint broadly to include allegations of discrimination based on gender.

[2] Title VII does not list "gender" as a protected characteristic, but courts have interpreted the term "sex" under Title VII as encompassing both sex (the biological differences between men and women) and gender (to act in the way society expects of a man or woman). *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000).

receives a state agency right-to-sue letter, he or she becomes "entitled" to an EEOC right-to-sue letter 180 days after the state agency charge was deemed filed with the EEOC. *Id.* at 1244. Once a person becomes "entitled" to an EEOC right-to-sue letter, he or she must file suit within 90 days of receiving it. *Id.* at 1244-45. The 90 day filing period is "a statute of limitations subject to equitable tolling in appropriate circumstances." *Id.* at 1245 (citation omitted).

Here, Plaintiff first instituted proceedings by filing a discrimination charge with a state agency, the Department of Fair Employment and Housing ("DFEH"), on October 24, 2008. The charge of discrimination was based on grounds of race, color, national origin and sex. (Doc. No. 1, p. 70.) The DFEH issued a Notice of Case Closure/Right-to-Sue Letter on Nov. 7, 2008. Plaintiff then had either 30 days from receipt of notice or 300 days from the alleged unlawful practice, whichever is shorter, to file her discrimination charge with the EEOC. For Plaintiff, the shorter period was 30 days from receipt of notice. Thus, Plaintiff had to file her charge with the EEOC on or before December 6, 2008. Plaintiff filed her charge with the EEOC after her deadline had passed, on February 20, 2009. The EEOC denied her charge as untimely.

Nonetheless, Plaintiff's DFEH charge satisfied the requirement to file a charge with the EEOC. The DFEH has a worksharing agreement with the EEOC, wherein the DFEH is the agent of the EEOC for the "purpose of receiving . . . charges." *Steifel*, 624 F.3d at 1244; 42 U.S.C. § 2000e-8(b). Plaintiff received a state agency right-to-sue letter on November 7, 2008. Thus, Plaintiff became "entitled" to an EEOC right-to-sue letter 180 days later, on May 6, 2008. Thereafter, Plaintiff had 90 days, until August 4, 2009, to file suit. Plaintiff did not file her suit until September 3, 2009. (Doc. No. 1.)

Plaintiff did not file her complaint within the 90 day statute of limitations period. Although the 90 day filing period is subject to equitable tolling, courts have "applied [equitable tolling] sparingly" and in "extreme cases." *Scholar v. Pacific Bell*, 963 F.2d 264, 267 (9th Cir. 1992). In this case, Plaintiff offers no explanation for the delay in filing, and has not demonstrated "due diligence in preserving h[er] legal rights." *See Irwin v. Veterans Admin.*, 498 U.S. 89, 96 (1990). Accordingly, the Court finds no circumstances for equitable tolling here. Plaintiff's Title VII claims are time-barred.

### 2. Title VII Discrimination Claim

Defendant also moves for summary judgment on the ground that Plaintiff's Title VII discrimination claim fails as a matter of law because she cannot establish a prima facie case of discrimination based on her race, national origin or gender.

The plaintiff in a Title VII action bears the initial burden of establishing a prima facie case of unlawful discrimination. Plaintiff may present either direct evidence of discriminatory animus, or circumstantial evidence through the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under the burden-shifting framework, the plaintiff meets this initial burden by demonstrating that (1) she is a member of a protected class; (2) she performed her job in a satisfactory manner; (3) she suffered an adverse employment decision; and (4) she was treated differently than similarly situated persons outside her protected class or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See id.*; *Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010). "The requisite degree of proof necessary to establish a prima facie case for Title VII claims on summary judgment is minimal. . . ." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Once a plaintiff establishes a prima facie case, the burden "shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment decision." *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993). Then, the Plaintiff must respond to the employer's explanation of the adverse employment action with "specific" and "substantial" evidence that the employer's explanation is a pretext for discrimination. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).

#### a. Plaintiff's Prima Facie Case

Plaintiff proceeds to make her case under the *McDonnell Douglas* framework. First, the parties do not dispute that Plaintiff, a Vietnamese woman, is a member of a protected class for purpose of her Title VII discrimination claim.

///

1    Second, Plaintiff does not demonstrate that she competently performed her job in a
2 satisfactory manner.³ Plaintiff relies on her self-assessment of her job performance, and
3 "Certificates of Completion" showing that she completed certain technical skills training courses.
4 In her affidavit, Plaintiff states, "my performance was not poor and I was productive. I
5 communicated well with my co-workers and was not combative . . . . My job performance at
6 Defendant Qualcomm was good so I was not terminated for poor performance." (Nguyen Decl. ¶¶
7 6, 9.) Plaintiff's self-assessment is relevant to the inquiry of whether she performed competently
8 and in a satisfactory manner. In *Aragon v. Republic Silver State Disposal Inc.*, the Ninth Circuit
9 concluded that a plaintiff who relied on his self-assessment of his job performance, as well as
10 additional evidence demonstrating that he performed in a satisfactory manner, met the "minimal
11 prima facie burden" of establishing the second element. 292 F.3d 654, 660 (9th Cir. 2002). The
12 Ninth Circuit reasoned that the plaintiff's self-assessment was relevant to determining whether he
13 performed competently, and that the plaintiff's self-assessment was "not the only evidence he
14 presented." *Id.*

15    However, unlike *Aragon*, Plaintiff's additional "Certificates of Completion" evidence do
16 not provide support that she performed her job in a satisfactory manner. In *Aragon,* the plaintiff's
17 additional evidence demonstrating that he performed competently included evidence that he
18 received no formal write-ups for poor performance, and evidence that his work product produced
19 equal results to that of his co-workers. Such evidence provides information as to how he actually
20 performed on the job. *Aragon*, 292 F.3d at 659. Here, Plaintiff's certificates only indicate that
21 Plaintiff acquired a skill set. Such evidence does not provide any information as to her actual job
22 performance. Absent additional evidence, Plaintiff's self-assessment fails to meet the minimal
23 prima facie burden of showing she performed her job in a satisfactory manner.

24    Third, the parties do not dispute that Plaintiff experienced an adverse employment
25 decision. It is undisputed that Defendant terminated her employment. Plaintiff also asserts she
26 suffered an adverse employment action when Defendant denied her transfer request. Plaintiff's

27

28    ³Under *McDonnell Douglas*, "the elements and contours of a prima facie case will differ according to the facts at hand." *Hawn*, 615 F.3d at 1156. Here, the parties agree that as to the second element, Plaintiff must prove she was "performing competently." (*Def.'s Mot'n for Summ. J.* at 11; *Pl.'s Oppo.* at 13.) Consonant with the facts of this case, the Court agrees.

1  declaration and testimony show that she made a general request to transfer, and it is undisputed she
2  did not make a specific request to transfer to any particular position.

3  Fourth, Plaintiff does not contend she was treated differently than similarly situated
4  persons outside her protected class. Rather, Plaintiff argues the circumstances surrounding the
5  adverse employment actions give rise to an inference of discrimination. In support, Plaintiff refers
6  to two statements made by her supervisor. First, Plaintiff contends Stanton told her he
7  recommended she be hired because she was Vietnamese and would not need to be paid as much as
8  an American. (Nguyen Decl. ¶ 3.) Second, Plaintiff contends Stanton closed the door to his
9  office, pointed his finger in her face and said, "You are a woman Vietnamese, you have to listen to
10 me. Don't complain [about] anything, just come to work and finish your project." (Nguyen Decl.
11 ¶ 12; Nguyen Depo. 40:13-19.)

12 Plaintiff provides no evidence that Stanton's first statement was related to either adverse
13 employment decision. The statement was made in connection with the decision to hire Plaintiff,
14 and Plaintiff does not contend that Defendant's decision to hire her was an adverse employment
15 decision. Nor has Plaintiff produced evidence that the statement was made in connection with
16 Defendant's decision to deny her transfer request or to terminate her employment. Consequently,
17 the first statement does not show the circumstances surrounding the adverse employment actions
18 give rise to an inference of discrimination.

19 Regarding Stanton's second statement, the circumstances in which the statement was made
20 could give rise to an inference of discrimination. Plaintiff's testimony indicates Stanton made the
21 statement in response to one of Plaintiff's complaints about co-workers laughing at her and talking
22 behind her back. (Nguyen Depo. 40:1-25.) A jury could reasonably infer that the decision to deny
23 Plaintiff's transfer request was motivated in part by her supervisor's discriminatory belief that
24 because she is a Vietnamese woman, she should not complain about her co-workers and do her
25 work. Such evidence is minimal, though, because Plaintiff requested her transfer from Chad
26 Heslop and Elizabeth Rich and Plaintiff provides no evidence that Stanton was aware of her
27 transfer request or took any part in the decisional process to deny her request. (Nguyen Decl. ¶
28 13.) Although far from clear, Plaintiff has met the minimal burden of showing the fourth element.

1  Taking the record as a whole, however, Plaintiff has not met her initial burden of demonstrating all
2  four necessary elements to establish a prima facie case of discrimination.
3       Even if Plaintiff had satisfied her prima facie burden, Plaintiff fails to demonstrate
4  Defendant's legitimate, nondiscriminatory reasons for terminating her employment or denying her
5  transfer request were pretextual. Defendant contends Plaintiff was terminated from her position
6  for the legitimate reason that she failed to successfully complete her PIP. Defendant produces
7  declarations from supervisors and human resources representatives showing Plaintiff was not
8  prepared for her weekly PIP meetings and declined to attend a PIP meeting. (Stanton Decl. ¶ 14;
9  Bonofiglio Decl. ¶ 5; Def.'s Exh. I, J, K (email from Nguyen to Bonofiglio declining a PIP
10 meeting).)
11      Furthermore, Defendant articulates a legitimate nondiscriminatory reason why Plaintiff's
12 transfer request was denied. Under Qualcomm's policy, an employee must work the first twelve
13 months in the same position for which he or she was hired before becoming eligible for transfer.
14 (Bonofiglio Decl. ¶ 8.) Plaintiff had only been employed as a Lab Technician, Sr. for
15 approximately two to three months at the time she allegedly requested a transfer. Plaintiff
16 contends she previously worked for Qualcomm in 1997, but provides no evidence as to what
17 position she previously held, nor how long her previous term of employment lasted. (Nguyen
18 Decl. ¶ 14.) Also, Defendant's position regarding its company policy indicates that the first twelve
19 months are counted as consecutive, rather than cumulative, months. (*See* Def.'s Reply at 7.)
20 Defendant further explains that Plaintiff was never transferred because she never specified what
21 position she wanted to be transferred to.
22      Plaintiff provides no response or evidence to show Defendant's legitimate
23 nondiscriminatory reasons were pretextual. Her opposition contains no discussion of the third
24 stage of the *McDonnell Douglas* framework. She does not present any "specific, substantial"
25 evidence showing that Defendant's explanation for refusing to transfer her or for terminating her is
26 a pretext for discrimination. Under the *McDonnell Douglas* inquiry, "the burden of persuasion
27 always remains with the employee." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir.
28

1  2002). As such, she has failed to carry her burden at the third stage of the *McDonnell Douglas* framework.

2  Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's Title VII discrimination claim.

### 3. <u>Title VII Harassment Claim</u>

Defendant moves for summary judgment on grounds that even if Plaintiff's Title VII harassment claim is not time barred, Plaintiff cannot produce evidence that she was subjected to unwelcome severe or pervasive conduct because of her protected characteristics.

Harassment in the form of a hostile work environment constitutes unlawful discrimination in violation of Title VII. *Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 871 (9th Cir. 2001) (*citing Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21(1993) (citations and internal quotation marks omitted). "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at *'discriminat [ion] . . . because of . . . [protected characteristics].'" Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (emphasis in original).

To make a prima facie case of a hostile work environment, a plaintiff must show (1) she was subjected to verbal or physical conduct because of a protected characteristic, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Harris*, 510 U.S. at 21; *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007). To determine the level of severity or pervasiveness, courts look at all the circumstances, which may include the frequency of the discriminatory conduct, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Harris,* 510 U.S. at 23. Further, the working environment must be both objectively hostile, as perceived by a reasonable person, and subjectively hostile, as perceived by the plaintiff herself. *Id.* at 20-21.

1    Plaintiff submits the following instances of conduct created a hostile work environment:
2 First, Stanton's statement that he recommended she be hired because she was Vietnamese and he
3 could pay her less than an American, and his statement that she is a Vietnamese woman and must
4 not complain and do her work.  Second, Defendant's conduct of placing her on an allegedly
5 unjustified performance plan and requiring her to attend weekly PIP meetings.  Third, her co-
6 workers allegedly talking behind her back, laughing at her, and sabotaging her work.  Fourth,
7 Qualcomm supervisory and human resources employees grabbing and scratching her arm at the
8 termination meeting.

9    In assessing all the circumstances, Plaintiff has not made a prima facie case of a hostile
10 work environment.  Regarding Defendant's conduct of placing her on an "unjustified" PIP,
11 Plaintiff presents insufficient evidence to create a genuine issue of fact that the PIP was
12 unjustified.  In support, Plaintiff relies solely on her self-assessment of her job performance.  "[A]n
13 employee's subjective personal judgments of her competence alone do not raise a genuine issue of
14 material fact."  *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).  Plaintiff
15 produces no other evidence that the PIP goals of taking responsibility for her work, meeting her
16 technical responsibility duties, and communicating more effectively with co-workers were
17 unwarranted.  Nor has she presented evidence that Defendant's decision to place her on a PIP was
18 because of her race, national origin, or gender.

19    Regarding Plaintiff's contention that co-workers were talking behind her back and laughing
20 at her, Plaintiff produces no evidence to create a genuine issue of fact to establish that she was
21 actually subjected to such conduct.  A review of her deposition testimony shows Plaintiff never
22 actually heard the substance of her co-workers' conversations, and that she heard her co-workers
23 laughing and assumed they were laughing at her.  (Nguyen Depo. 38:8-23.)  Furthermore, she
24 never saw anyone touch her workstation wiring materials, and only once did she observe a co-
25 worker take a plate off of her workstation board.  (Nguyen Depo. 72:2-16; 73:1-15.)  Plaintiff
26 relies on her own self-serving statements that she told people at Qualcomm she believed she was
27 being harassed and discriminated against because she is a Vietnamese woman.  (Nguyen Decl. ¶
28 11.)

1   As to Defendant's supervisory and human resources employees allegedly grabbing and
2 scratching her arm at the termination meeting, although such circumstances may be actionable
3 under a Title VII harassment claim, the plaintiff must show the conduct was because of her
4 protected status.  Here, Plaintiff produces no evidence that the alleged conduct of grabbing and
5 scratching of her arm bore any relation to her protected characteristics.  *See e.g., Kang v U. Lim*
6 *America, Inc.*, 296 F.3d 810, 817 (9th Cir. 2002).

7   Plaintiff identifies two verbal comments made by Stanton that pertain to her status as a
8 Vietnamese Woman. (Nguyen Decl. ¶¶ 3,12; Nguyen Depo. 71:5-11.)  However, when examining
9 all the circumstances, Stanton's comments amount to two isolated offensive comments amongst
10 other sparse allegations of conduct that are either largely unsubstantiated by the evidence, or
11 unrelated to her protected characteristics.  *See Vasquez v. County of Los Angeles*, 349 F.3d 634,
12 644 (9th Cir. 2003) ("two isolated offensive remarks, combined with [a plaintiff's] other
13 complaints about unfair treatment . . . [is] not severe or pervasive enough to create a hostile work
14 environment.").

15   Plaintiff's evidence falls far short of establishing that her "workplace is permeated with
16 discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the
17 conditions of [her] employment and create an abusive working environment."  *Harris*, 510 U.S. at
18 521.  A reasonable person could not objectively conclude that a hostile environment was created in
19 light of Plaintiff's lack of evidence to support her contention that the PIP was unjustified, that
20 Plaintiff never actually heard the substance of her co-workers' conversations, she merely heard
21 them laughing and assumed they were laughing at her, and the lack of connection between such
22 verbal and physical conduct and Plaintiff's protected characteristics.  Accordingly, the Court
23 **GRANTS** Defendant's motion for summary judgment as to Plaintiff's Title VII harassment claim.

24  **C.    Assault and Battery Claims**

25   Plaintiff's complaint also alleges common law claims for assault and battery.  Plaintiff
26 contends that during her termination meeting, Defendant's supervisory employees grabbed and
27 scratched her arm as they seized a paper from her hand.  Defendant moves for summary judgment
28 on grounds that Plaintiff's assault and battery claims are barred by the California Worker's

1  Compensation Act exclusive remedy provisions. Plaintiff contends her claims fall within an
2  exception provision to the exclusive remedy provisions.

3  1.   Workers' Compensation Act

4  California Labor Code section 3600, subdivision (a), provides that subject to certain
5  exceptions, workers' compensation liability, "in lieu of any other liability" will exist "against an
6  employer for any injury sustained by his or her employees arising out of and in the course of the
7  employment." This exclusive remedy provision is based on the presumed "compensation
8  bargain," such that the employer "assumes liability . . . without regard to fault in exchange for
9  limitations on the amount of that liability." *Shoemaker v. Myers*, 52 Cal. 3d 1, 16 (1990). Under
10 the compensation bargain, "[t]he employee is afforded relatively swift and certain payment of
11 benefits to cure or relieve the effects of industrial injury without having to prove fault but, in
12 exchange, gives up the wider range of damages potentially available in tort." *Id.*

13 As noted above, the Workers' Compensation Act exclusive remedy provision is subject to
14 exceptions. For example, under California Labor Code section 3601(a)(1), an injured employee
15 may bring a civil action where the employee may prove that the "injury . . . is proximately caused
16 by the willful and unprovoked physical act of aggression of the other employee." The California
17 Supreme Court has concluded that, "as a general rule, the phrase 'willful and unprovoked physical
18 act of aggression' includes an 'intent to injure requirement.'" *Torres v. Parkhouse Tire Serv., Inc.*,
19 26 Cal. 4th 995, 1006 (2001).

20 When one employee injures another in a "willful and unprovoked physical act of
21 aggression," the employer is not to be held liable. Cal. Lab. Code § 3601(b). Although section
22 3602(b)(1) permits an employer to be liable for a "willful physical assault by the employer,"
23 California courts have concluded the only way this language can be consistent with § 3601(b) is if
24 it is interpreted to mean that an employer can only be liable for a willful assault if it intentionally
25 engages in "positive misconduct." *See, Arendell v. Auto Parts Club, Inc.*, 29 Cal. App. 4th 1261,
26 1265 (1994) (discussing intent requirement); *Iverson v. Atlas Pacific Engineering,* 143 Cal.App.3d
27 219, 227 (1983) (discussing positive misconduct requirement). "Positive misconduct" includes
28

1  acts whereby the employer is informed of an employee's intentional tortious conduct and ratifies
2  the conduct. *Iverson,* 143 Cal. App. 3d at 227.

3       Here, Plaintiff provides no evidence to suggest Defendant's supervisory employees
4  harbored an intent to injure Plaintiff.  Plaintiff's characterization of the incident indicates that
5  Defendant's supervisory employees' "willful and intentional" conduct was committed with the
6  intent to "seize[] a paper. . . ."  (*Pl.'s Oppo.* at 17.)  The events that occurred at the termination
7  meeting are the types of "flare-ups" and "disagreements" that the legislature envisioned should be
8  encompassed by the Workers' Compensation Act exclusive remedy provision. *Torres*, 26 Cal. 4th
9  at 1009 (internal marks and citations omitted).  Because Plaintiff produces no evidence to meet the
10  "intent to injure" requirement, Plaintiff cannot establish Defendant's supervisory employees'
11  conduct falls within the exception provision in section 3601(a)(1).

12       Even if Plaintiff had established the "intent to injure" requirement under 3601(a)(1),
13  Plaintiff has not shown that Defendant engaged in any type of positive misconduct to be held
14  liable under the exception provision in section 3602(b)(1).  Because Plaintiff produces no evidence
15  that Defendant engaged in any type of positive misconduct, "[t]he foundation for potential
16  avoidance of workers' compensation exclusivity-intentional conduct-is simply absent." *Arendell*,
17  29 Cal. App. 4th at 1265.  Plaintiff's assault and battery claims are barred by the Workers'
18  Compensation Act exclusive remedy provisions.  Accordingly, the Court **GRANTS** Defendant's
19  motion for summary judgment as to Plaintiff's claims for assault and battery.

20  <center>CONCLUSION</center>

21       Based on the foregoing reasons, the Court **GRANTS** Defendant Qualcomm Inc's motion
22  for summary judgment in its entirety.  This order disposes of all claims.  Accordingly, the Court
23  **ORDERS** the Clerk of Court to enter judgment in favor of Defendant, close the case file, and
24  terminate this case.

25       **IT IS SO ORDERED.**

26  DATED:  March 28, 2011

27                               Hon. Michael M. Anello
28                               United States District Judge