1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHRISTINE NGUYEN,

                    Plaintiffs,

v.

QUALCOMM INC.,

                    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Civil No. 09-1925-MMA (WVG)

ORDER GRANTING MOTION TO
COMPEL INDEPENDENT
MENTAL EXAMINATION OF
PLAINTIFF CHRISTINE NGUYEN

(DOC. NO. 106)

Pending before the Court is a motion filed by QUALCOMM INC., (hereinafter "Defendant") seeking a Federal Rule of Civil Procedure ("FRCP") 35(a) mental examination of CHRISTINE NGUYEN (hereinafter "Plaintiff"). Defendant filed an Ex Parte Application To Compel The Independent Mental Examination (hereinafter "IME") of Plaintiff (hereinafter "Motion to Compel"), wherein Defendant contends that Plaintiff placed her mental health in controversy by alleging severe and specific mental conditions, including

1

depression, fear and conversion.[1] (Mot. to Compel at 4-5.[2]) Defendant asserts that good cause exists to allow the IME because Plaintiff claims ongoing psychological injury, the IME is necessary to enable Defendant to ascertain the existence of possible "pre-existing causes" to Plaintiff's injuries, and to assess the nature and amount of the claimed damages.[3] Id. at 2, 4.

Plaintiff filed her Response In Opposition To Defendant's Motion To Compel Independent Mental Examination of Plaintiff (hereinafter "Opposition") wherein she alleges that her current mental condition is not in controversy. (Opposition at 2.) Plaintiff contends that her emotional distress is not ongoing, that she never stated in her deposition that the emotional distress she suffered was severe, and that her case only involves "garden-variety" allegations of past emotional distress. Id.

After reviewing the Motion to Compel, Plaintiff's Opposition, and supporting documentation, the Court hereby issues the rulings set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 3, 2009, Plaintiff filed a Complaint against Defendant. In her Complaint, Plaintiff alleges she was harassed, discriminated against, and eventually terminated from her employment with Defendant on August 20, 2008, because of her race,

---

[1] "Conversion disorder is a condition in which [a person] show[s] psychological stress in physical ways. The condition was so named to describe a health problem that starts as a mental or emotional crisis — a scary or stressful incident of some kind — and converts to a physical problem." Mayo Clinic, http://www.mayoclinic.com/health/conversion-disorder/DS00877/METHOD=print (updated Feb. 3, 2011).

[2] Citations to the Motion to Compel refer to the Court's ECF System.

[3] Defendant appears to merge the "good cause" and "in controversy" requirements by relying on Schlagenhauf v. Holder, 379 U.S. 104, 119, 85 S. Ct. 234 (1964). (Mot. to Compel at 4.) A minority of districts in the Ninth Circuit have read Schlagenhauf, as merging the "in controversy" and "good cause" requirements when a plaintiff claims ongoing mental injury. See Gavin v. Hilton Worldwide, Inc., 2013 WL 1402350, at *3, n. 3 (N.D. Cal. Apr. 5, 2013) (reading the requirements as merged); Riel v. Ayers, 2010 WL 1980251, at *1, n. 2 (E.D. Cal. May 17, 2010) (explaining that "a few courts, without explanation elide" the two requirements); Ragge v. MCA/Universal Studios, 165 F.R.D. 605, 609 (C.D. Cal. Mar. 29, 1995) (reading the requirements as merged). The Court will analyze the "in controversy" and "good cause" requirements as separate in accord with the majority of courts in this district. The Court will ascribe Defendant's arguments to the relevant FRCP 35 requirement for clarity.

09CV1925

color, or national origin. Plaintiff also claims that she was repeatedly physically abused.[4/] (Compl. 1, 4.[5/]) The Complaint alleges seven causes of action, including claim four, "intentional infliction of emotional distress." Id. at 2. The Complaint details that Defendant's "extreme and outrageous conduct has indeed caused [Plaintiff] severe emotional distress." Id. at 4. Furthermore, Plaintiff demands that she be paid "a sufficient monetary sum to compensate her for the *emotional distress . . . she sustained.*" Id. at 6 (emphasis added). Plaintiff also alleges that she suffers from depression. Id. at 1.

The Complaint contains various other references where Plaintiff emphasizes the severity of her emotional state, including: (1) a November 29, 2008, email from Garry Benanti to Plaintiff stating, "Christine, I appreciate you trusting me with . . . the discussion about your thoughts and the *depressed state that you are in*;" (2) a December 17, 2008, letter from Plaintiff to her previous attorney stating, "I had so much of *suffering and depressing at work . . .* I have *so much of depression* going on [in] my life since I was the[ir] Employee *until now*;" (3) Plaintiff's application for disability benefits in which she indicates that she stopped working in part, due to "depression," and that her injuries[6/] were sustained on the following dates, "6/26/08, 8/20/08, 10/24/08, 11/17/08, *until now* [February 02, 2009];" (4) the Doctors Certificate included in the disability application which diagnoses Plaintiff with "*major depression*, single episode, *severe,*" and finds Plaintiff to have such other disabling conditions as *"depression, anxiety everyday, insomnia, injury spells*;" and (5) Plaintiff's March 12, 2009, Workers' Compensation Claim Form, which describes Plaintiff's injuries as consisting of "*numbness to left pa[r]t of body, anxiety, depression, insomnia, fear, flashbacks.*" Id. at 24, 31-32, 56-58, 81 (emphasis added).

---

[4/] Plaintiff claims that her right arm was grabbed by two different Qualcomm employees, and that her arms were pinched and scratched. (Compl. at 4, 31.).

[5/] Citations to the Complaint refer to the page numbers assigned by the Court's ECF System.

[6/] Plaintiff indicates that her injuries consisted of "depression, harass[ment], denied transfer, race/color, national origin, [a]buse me to use toilet. They act violence to kick me out of work." Id. at 56. As such, the dates listed in Plaintiff's disability application could reference any or all of these alleged injuries.

09CV1925

Plaintiff's Complaint also includes approximately ten pages of medical documents purporting to show that she suffers from a variety of ailments including being "very nervous," "shaking extreme," suffering from "severe depression," being treated by a psychiatrist for "conversion disorder," and suffering a stroke.[7] Id. at 45-47, 49.

In response to discovery, Plaintiff "produced dozens of pages of medical files to support her claims and named almost half a dozen psychiatric treaters." (Mot. to Compel at 2.) Defendant provided a sample of those documents, including a December 7, 2009, letter from Plaintiff's doctor, stating "[Plaintiff] has been suffering *severe depression* (job related since June 2008)," and that she is under care of a psychiatrist. Id. at 24 (emphasis added). Also, Defendant provided a letter from Plaintiff's doctor indicating that an MRI of Plaintiff's brain showed "no evidence of stroke." Id. at 26.

In March 2010, Plaintiff testified at a deposition. At the deposition, Plaintiff testified that she suffered from "depression" and "paralysis" as a result of Defendant's alleged harassment. (Mot. to Compel at 16-17.) Plaintiff also stated that she "was depressed . . . and very frightened . . . [to] go out or socialize with anyone." Id. at 17. Also, Plaintiff testified, "[e]very time I had an onset of depression I would think about the -what happened. I have flashbacks of being beaten and I'm terrified when I see men particularly . . . I'm very afraid to go outside." Id. Finally, Plaintiff stated "I can't work. I have paralysis in my left leg. I have depression . . ." Id. at 19.

On June 21, 2013, Plaintiff filed the Opposition to the Defendant's Motion to Compel. In the Opposition, Plaintiff states that her mental condition does not currently persist, that it is not severe, and therefore that Plaintiff's *current* mental condition is not in controversy. (Opposition at 2-3.[8])

The Court acknowledges that upon appeal of Judge Michael M. Anello's Order granting Defendant's Summary Judgment Motion, the Ninth Circuit affirmed dismissal of

[7] A large portion of the medical documents included in the Complaint are illegible. Therefore, the Court only includes the portions it could readily discern.

[8] Citations to the Opposition refer to the page numbers assigned by the Court's ECF System.

4

09CV1925

all Plaintiff's causes of action except for Plaintiff's Title VII discrimination cause of action. The Court understands that, following the Ninth Circuit decision, Plaintiff has communicated a large monetary demand for damages, of which approximately 70% is for damages for emotional distress and pain and suffering resulting in physical injury from conversion disorder. Furthermore, Plaintiff is likely to offer expert testimony regarding her diagnosis of conversion disorder at trial.

On May 29, 2013, Defendant requested that Plaintiff submit to an IME. (Mot. to Compel at 3, 28.) Plaintiff refused and indicated that the instant Motion would be necessary. Id. at 4.

## II. <u>LEGAL STANDARD</u>

FRCP 35(a) provides that a Court "may order a party whose mental or physical condition . . . is *in controversy* to submit to a physical or mental examination by a suitably licensed or certified examiner." FRCP 35(a)(1) (emphasis added). However, the order may only be made if there is also "*good cause*." FRCP 35(a)(2)(A) (emphasis added). The moving party has the burden to show that the condition for which the examination is sought is "in controversy" and there exists "good cause" for the examination. See <u>Schlagenhauf v. Holder</u>, 379 U.S. at 119.

Although the Ninth Circuit has not addressed the "in controversy" requirement, a court in this district announced a test in <u>Turner v. Imperial Stores</u>, 161 F.R.D. 90 (S.D. Cal. Apr. 7, 1995), that has been regularly applied by district courts. See <u>e.g.</u>, <u>Montez v. Stericycle, Inc.</u>, 2013 WL 2150025, at *3 (E.D. Cal. May 16, 2013); <u>Tamburri v. SunTrust Morg. Inc.</u>, 2013 WL 942499, at *3 (N.D. Cal. Mar. 11, 2013); <u>Sanders v. Holdings</u>, 2012 WL 2001967, at *2 (S.D. Cal. June 4, 2012); <u>Hongwei Zhang v. United Technologies Corp.</u>, 2011 WL 3890262, at *1 (S.D. Cal. Sept. 2, 2011). Under the <u>Turner</u> test, the "in controversy" requirement is met where, in addition to a claim of emotional distress, the case involves one or more of the following: (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to

support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is "in controversy"' within the meaning of Rule 35. <u>Juarez v. Autozone Stores Inc.</u>, 2011 WL 1532070, at *1 (S.D. Cal. Apr. 21, 2011) (quoting <u>Turner</u>, 161 F.R.D. at 95).

Although FRCP 35 "is to be construed liberally in favor of granting discovery," "garden-variety" emotional distress is insufficient to put Plaintiff's mental state in controversy. <u>Turner</u>, 161 F.R.D. at 96; <u>See</u> also <u>Schlagenhauf</u>, 379 U.S. at 118. "One district court has characterized garden-variety claims for emotional distress as 'claims of generalized insult, hurt feelings, and lingering resentment' that 'do not involve a significant disruption of the plaintiff's work life and rarely involve more than a temporary disruption of the claimant's personal life.'" <u>Ortiz v. Potter</u>, 2010 WL 796960, at *3 (E.D. Cal. Mar. 5, 2010) [quoting <u>Javeed v. Covenant Medical Center Inc.</u>, 218 F.R.D. 178, 179 (N.D. Iowa, Apr. 3, 2001)]. Another district court distinguished a garden-variety claim of emotional distress from "a claim of psychic injury or psychiatric disorder." <u>Houghton v. M & F Fishing, Inc.</u>, 198 F.R.D. 666, 668 (S.D. Cal. Jan. 10, 2001) [quoting <u>Sabree v. United Broth. of Carpenters & Joiners of America, Local No. 33</u>, 126 F.R.D. 422, 426 (D. Mass. June 8, 1989)].

To establish "good cause" exists for the IME, the moving party generally must offer specific facts showing the examination is necessary and relevant to the case. <u>See</u> <u>Gavin</u>, at *3; <u>Raggae</u>, 165 F.R.D. at 609. Factors considered in assessing whether "good cause" exists include, but are not limited to: (1) "the possibility of obtaining desired information by other means;" (2) "whether plaintiff plans to prove her claim through testimony of expert witnesses;" (3) "whether the desired materials are relevant;" and (4) "whether plaintiff is claiming ongoing emotional distress." <u>Juarez</u>, at *1 [quoting <u>Impey v. Office Depot, Inc.</u>, 2010 2985071, at *21 (N.D. Cal. July 27, 2010)].

Regardless of whether the "good cause" requirement is met, it is within the Court's discretion to determine whether to order an examination. <u>See</u> <u>Williams v. Troehler</u>, 2010 WL 121104, at *4 (E.D. Cal. Jan. 7, 2010) ("even if good cause is shown, it is still within the court's discretion to determine whether to order an examination."); <u>Kob v. County of Marin</u>,

2009 WL 3706820, at *3 (N.D. Cal. Nov. 3, 2009) (since the defendant failed to show good cause, "it remained within the court's discretion whether to grant the Rule 35(a) order."); Hodges v. Keane, 145 F.R.D. 332, 334 (S.D.N.Y. Jan. 6, 1993) (since defendant does not allege ongoing suffering, "a Rule 35(a) order lies soundly within the court's discretion.").

### III. ANALYSIS

Upon review of the factual and procedural background noted above, the Court concludes that Plaintiff's Complaint expressly alleges a claim of intentional infliction of emotional distress. (Compl. at 2, 4.) The Court acknowledges that Plaintiff did not use the word "severe" in the limited portions of her deposition that were provided with Defendant's Motion to Compel. However, Plaintiff repeatedly indicates in her Complaint that her emotional distress was severe. In fact, Plaintiff indicates that her emotional distress was so severe that she was diagnosed with conversion disorder resulting in physical paralysis. (Compl. at 46; Mot. to Compel at 19, 26.) Plaintiff specifies that she attributes her depression and paralysis to Defendant's actions. (Mot. to Compel at 16.) Moreover, the Court deduces that Plaintiff's emotional distress could have begun as early as June 28, 2008, and continued at least until March 2010, and perhaps after, but no later than June 21, 2013.

### A.   PLAINTIFF'S MENTAL CONDITION IS "IN CONTROVERSY"

Defendant claims that Plaintiff put her mental condition in controversy by claiming "severe and specific mental conditions," including depression, fear, and physical paralysis resulting from conversion. Id. at 4-5. Defendant and Plaintiff both cite Turner, to show the factors a court should analyze to determine that the "in controversy" requirement is met. See Turner, 161 F.R.D. at 95.

Plaintiff's case involves four of the five Turner scenarios. First, Plaintiff expressly alleges a cause of action for intentional infliction of emotional distress in the Complaint. (Compl. at 2.) Second, Plaintiff alleges a specific psychiatric disorder by claiming that she suffered from physical paralysis due to conversion disorder. Id. at 46; Mot. to Compel at 19, 26. Third, Plaintiff alleges a claim of unusually severe emotional distress. Throughout the

7

1   Complaint Plaintiff emphasizes the severity of her mental condition. Specifically, Plaintiff
2   states that Defendant caused her "severe emotional distress," and explains that her condition
3   was so severe as to cause numbness to the left side of her body. (Compl. at 4, 81.) Plaintiff
4   also contends that she suffered from depression, fear,  insomnia, and flashbacks. Id. at 24,
5   31-32, 45-47, 49, 56-58, 81; Mot. to Compel at 16-17, 19, 24. Fourth, the Court understands
6   that Plaintiff plans to offer expert testimony at trial to support her diagnosis of conversion
7   disorder. Fifth, Plaintiff has not conceded that her mental condition is in controversy. To the
8   contrary, Plaintiff asserts that "[n]one of the above four [Turner] requirements exist in the
9   present case." (Opposition at 2.).

10          To clarify, Turner prescribes that courts should order plaintiffs to undergo an IME
11   "where the cases involve . . . one or more," of the five scenarios listed. Turner, 161 F.R.D.
12   at 95. Thus, the scenarios listed in Turner, are not "requirements" as Plaintiff suggests.
13   (Opposition at 2.) The Court finds that in addition to making a claim for emotional distress,
14   Plaintiff's case also involves four of the five Turner scenarios.

15          Also, Plaintiff argues that her mental condition is not "in controversy" because she has
16   only alleged a "garden-variety" claim of emotional distress. (Opposition at 2.) The Court
17   disagrees with Plaintiff and finds that she has not claimed "garden-variety" emotional
18   distress. Plaintiff cites Sabree, to show that a "garden-variety" claim of emotional distress
19   is an insufficient basis on which to find a Plaintiff has put her mental condition at issue.[9/]
20   Sabree, 126 F.R.D. at 426. Plaintiff characterizes her emotional distress as more than
21   "generalized insult, [and] hurt feelings." Ortiz, at *3. Plaintiff alleges in her Complaint that
22   she suffered from depression, insomnia, and paralysis, all symptoms that indicate Plaintiff's
23   emotional distress is not "garden-variety." (Compl. at 31-32, 46, 81.) Further, "garden-
24   variety" claims of emotional distress have been distinguished from those claims that involve
25   a psychiatric disorder. Houghton, 198 F.R.D. at 668. As discussed above, Plaintiff alleges

26   _____

27          [9/] The Court notes that Sabree dealt with whether an exception to the psychotherapist-patient
     privilege applied. Sabree, 126 F.R.D. at 426. However, because the exception in question pertained to
28   whether the Sabree plaintiff put his mental condition at issue, Plaintiff correctly cites the case. Id.

she suffered from conversion disorder, thereby further distinguishing her claim from "garden-variety" emotional distress.

In concluding that Plaintiff's mental condition is "in controversy," the Court also considers that a large portion of her claimed damages are for emotional distress. Numerous district courts have held that "[w]hen emotional distress damages are a major component of a damages claim, a litigant's mental health . . . [is] in controversy." Walti v. Toys R Us, 2011 WL 3876907, at *2 (N.D. Ill. Aug. 31, 2011); See e.g., Haymer v. Countrywide Bank, FSB, 2013 WL 657662, at *4 (N.D. Ill. Feb. 22, 2013) (holding plaintiff's mental condition "in controversy" because "Plaintiff's emotional injuries comprise a significant portion of her claimed damages."); Bonner v. Normandy Park, 2009 WL 302278, at *3 (W.D. Wash. Feb. 5, 2009) ("Plaintiff was compelled to submit to a medical examination involving his mental state given that Plaintiff was asserting emotional distress damages under FRCP 35(a)."); Halterman v. Legato Software, 2006 WL 5305730, at *1 (N.D. Cal. Mar. 22, 2009) ("Inasmuch as Plaintiff's prayer for relief included emotional distress damages, Plaintiff was ordered to undergo a mental examination under Rule 35."); Bovey v. Mitsubishi Motor Manufacturing of America, Inc., 2002 U.S. Dist LEXIS 5701, at *3 (C.D. Ill. Apr. 3, 2002) ("Where . . . specific emotional distress damages are a large portion of plaintiff's damages claim, and the plaintiff intends to introduce mental health evidence or testimony at trial, a defendant is not required to simply accept the plaintiff's evidence without any opportunity to introduce evidence in rebuttal."); But see Ford v. Contra Costa County, 179 F.R.D. 579, 580 (N.D. Cal. 1998) (finding that a "mere prayer for emotional distress damages" does not place a plaintiff's mental condition in controversy for purposes of FRCP 35.

As another Ninth Circuit District Court explained, "the bulk of the reported case law demonstrates that a claim for emotional distress damages, *by itself*, is not sufficient to place the plaintiff's mental condition in controversy . . . Courts generally require the party seeking to compel the evaluation to establish an additional element [one of the five Turner scenarios]. Riel, at *2 (emphasis added). Here, emotional distress damages comprise a significant

portion of Plaintiff's damages demand. Approximately 70% of Plaintiff's demand is for emotional distress and pain and suffering resulting from Plaintiff's alleged conversion disorder. Further, Defendant has sufficiently demonstrated Plaintiff's case involves four of the five <u>Turner</u> scenarios and that Plaintiff's claim is not one of "garden-variety" emotional distress. Thus, the Court concludes that Defendant has met its burden by showing Plaintiff's mental condition is "in controversy." <u>See</u> <u>Schlagenhauf</u>, 379 U.S. at 119.

### B.   "GOOD CAUSE" EXISTS TO ORDER THE IME

Defendant argues that "good cause" exists to order Plaintiff to submit to the IME because Plaintiff has claimed ongoing psychological injury and because the IME is necessary to enable Defendant to ascertain the existence of possible "pre-existing causes" to Plaintiff's injuries. (Mot. to Compel at 2, 4.) Plaintiff contends that her *current* mental condition is not in controversy and that a psychiatrist cannot aid in determining *past* emotional distress. (Opp. at 2-3.) Factors considered in assessing whether "good cause" exists include, but are not limited to: (1) "the possibility of obtaining desired information by other means;" (2) "whether plaintiff plans to prove her claim through testimony of expert witnesses;" (3) "whether the desired materials are relevant;" and (4) "whether plaintiff is claiming ongoing emotional distress." <u>Juarez</u>, at *1.

Plaintiff states in the Opposition that, as of June 21, 2013, she is not presently experiencing emotional distress. However, it is unclear exactly when, after Plaintiff's deposition in March 2010, her mental injury abated. Furthermore, since Plaintiff's Opposition does not address her physical condition, it is unclear whether Plaintiff's physical injuries resulting from the conversion disorder presently persist. As to Plaintiff's mental injuries, the Court determines that they were ongoing, conceivably from as early as June 28, 2008, to as late as June 20, 2013. (Compl. at 57; Opp.) As to Plaintiff's physical injuries, it is unclear whether the paralysis still persists.

The factors weigh in favor of finding that "good cause" exists. First, the Court finds the IME is necessary to enable Defendant to determine the existence of possible "pre-

existing causes," to Plaintiff's injuries and to ascertain the extent of her damages. A pre-existing cause to Plaintiff's injuries would have a direct, mitigating effect on Plaintiff's claimed damages. Defendant specifically inquires as to any pre-existing causes to Plaintiff's *present* situation. (Mot. to Compel at 2.) However, the Court posits that a "pre-existing" cause is necessarily in the past, having already caused or contributed to any potential damage to Plaintiff's condition, regardless of whether that condition presently exists. Thus, it is unnecessary for Plaintiff to be currently emotionally distressed to determine the existence of potential pre-existing causes for her previous emotional distress. Moreover, Plaintiff may be still be suffering from the physical manifestations of her mental condition.

Furthermore, if "plaintiff's medical records and depositions [did] not contain a thorough assessment of [her] current mental and emotional condition," and are insufficient for Defendant to "ascertain the nature and extent of the injuries" there may be good cause for an IME. Riel, at *3 [quoting Doe v. District of Columbia, 229 F.R.D. 24, 27 (D.D.C. July 21, 2005)]. A defendant should have a "balanced opportunity to assess the plaintiff's allegations and proof concerning emotional distress damages," and a plaintiff's chosen expert should not be the only expert who "every actually examined the plaintiff." Baron v. United States, 2013 WL 3197134, at *2 (D. Me. June 21, 2013). Thus, the IME is necessary to afford the Defendant an opportunity to ascertain the exact duration of Plaintiff's alleged emotional and physical injuries, and the extent to which Defendant's actions may have caused Plaintiff's injuries. The IME will also enable Defendant to determine the nature, amount, and extent of Plaintiff's claimed damages.

Second, as mentioned above, the Court understands that Plaintiff is likely to offer expert testimony regarding her conversion disorder diagnosis. The Court considers this factor when deciding the existence of "good cause."

Third, as set forth above, the information Defendant wishes to ascertain is directly relevant to determining the nature and extent of Plaintiff's alleged damages.

09CV1925

Fourth, the Court determines that Plaintiff's emotional distress was ongoing at least until March 2010, and that Plaintiff may still be suffering from the alleged conversion disorder. Plaintiff's Opposition is the first time the Court was informed that Plaintiff is not currently suffering from emotional distress. Thus, the Court is apprehensive of encouraging a practice whereby a party attempts to thwart a request for an IME by asserting that they are no longer suffering from emotional distress and that therefore an IME is inappropriate to determine past suffering. Indeed, Defendant proffers Benchmaster, Inc. v. Kawaelde, 107 F.R.D. 752 (E.D. Mich. Oct. 11, 1985), to show that an IME cannot assist in determining a person's *past* emotional distress. Benchmaster, 107 F.R.D. at 754. In Benchmaster, the plaintiff alleged that his free will was overborne during a set period of time in which he was being extorted. Id. at 753. Specifically, the district court found "that a psychiatrist's opinion regarding the plaintiff's mental state *ten years earlier* would be inadmissible speculation [at trial]." Goomar v. Centennial Life Ins. Co., 855 F. Supp. 319, 326 (S.D. Cal. Mar. 8, 1994) (citing Benchmaster, 107 F.R.D. at 754) (emphasis added).

Here, Plaintiff does not claim that she only suffered at the time of Defendant's alleged discriminatory actions. In contrast, Plaintiff expressly claims her condition was ongoing, at least until 2010. Further, it is unclear whether Plaintiff still suffers from conversion disorder. Further, the analysis in Hodges, is helpful: "[plaintiff] does not claim . . . ongoing pain and suffering . . . [r]ather he asserts that he suffered pain and suffering at the time his rights were violated. This distinction is important. Had plaintiff elected to assert the existence of an ongoing mental illness resulting from defendants' act or omissions, defendants would undoubtedly be entitled to an order under Rule 35(a) allowing them to conduct a psychiatric evaluation to determine the existence of such condition." Hodges, 145 F.R.D. at *335. This district has favorably cited Hodges. See Sanders, at *3; Hongwei Zhang, at *2.

Therefore, the Court concludes that the factors weigh in favor of finding that the "good cause" requirement is met. Defendant should be afforded a reasonable opportunity to ascertain the exact duration and extent of Plaintiff's emotional distress and any resulting

physical injuries. Furthermore, any potential pre-existing causes to Plaintiff's current, or past, conditions are relevant to Defendant's determination of the extent of Plaintiff's alleged damages.

**C.    SCOPE OF THE IME**

Plaintiff argues that if the Court grants Defendant's Motion, the proposed Order is too broad and burdensome to Plaintiff and that it invades her privacy. (Opp. at 3.) To address these issues, Plaintiff proposes a number of revisions to Defendant's proposed Order. Each proposed revision is addressed in turn below:

**1.    Physical Limitations**

Plaintiff proposes that the IME be strictly limited to those parts of Plaintiff's body which she placed in issue. "[C]ourts in this district have rejected general privacy challenges to Rule 35 examinations where a party has placed his mental health at issue." Gavin, at *4. Defendant has properly limited the scope of the requested examination to assess the conditions for which Plaintiff is seeking damages. Specifically, Plaintiff's past and persent psychiatric, pychosocial, and psychological complaints.

**2. & 3.    Redundant Questions**

Plaintiff contends that Defendant should be prohibited from asking any questions that Defendant has already asked of Plaintiff regarding her medical, mental, or other history. Similarly, Plaintiff also argues that she should not be asked any questions that have already been asked of her by other experts or in deposition. The Court finds the discussion in Romano v. II Morrow, Inc., 173 F.R.D. 271 (D. OR. May 6, 1997), persuasive:

> To restrict a physician from questioning a patient during a physical examination unduly restricts the physician's ability to obtain the information necessary to reach medical conclusions. The questioning of the plaintiffs by defense counsel during the taking of their depositions, the historical medical records, and the answers of the plaintiffs interrogatories are no substitute for the answers to questions that a physician must pose to a patient during a physical examination. Romano, 173 F.R.D. at 273.

Though Romano discussed a physical examination, the Court agrees with, and extends the underlying reasoning to the mental examination at issue here. In order to afford

Defendant with a reasonable opportunity to "level the playing field," Defendant should be permitted to make all relevant inquires to Plaintiff's current and past mental treatment and complaints. See Ashley v. City and County of San Francisco, 2013 WL 2386655, at *3 (N.D. Cal. May 30, 2013) ("[O]ne of the purposes of Rule 35 is to level the playing field in cases where physical or mental condition is a issue, because '[a] plaintiff has ample opportunity for psychiatric or mental examination by his/her own practitioner.'").

### 4.   **Attorney Attendance And Recording**

Plaintiff requests that Plaintiff's attorney be permitted to attend and "tape record" the examination. "Generally, the court has discretionary authority under the discovery rules to permit the presence of a third person or a recording device at a court-ordered psychiatric examination." T.B. ex rel. G.B. v. Chico Unified School Dist., 2009 WL 837468, at *1 (E.D. Cal. Mar. 26, 2009). However, "[f]ederal courts have determined that third parties - whether human or electronic - cannot sit in on physical and mental examinations under FRCP 35 unless special circumstances require it." Stefan v. Trinity Trucking, LLC, 275 F.R.D. 248, 250 (N.D. Ohio, July 12, 2011); See e.g., Hertenstein v. Kimberly Home Health Care, Inc., 189 F.R.D. 620, 629 (D. Kan. June 14, 1999) (finding that plaintiff did not establish good cause to overcome general rule that counsel has no right to be present during a mental or physical examination); Ragge, 165 F.R.D. at 609-10 (disallowing a third party observer per plaintiff's request due to "the potential for a third party observer to interfere with, or even contaminate, a mental examination."). Here, Plaintiff does not make any showing that special circumstances exist to overcome the general rule that third parties are not permitted to attend an IME. Therefore, the Court concludes that Plaintiff's attorney is not permitted to attend or record the examination.

### 5.   **Two Hour Limitation**

Plaintiff argues the IME should be limited to two hours. Neither party cites any authority as to the requisite length of mental examinations under Rule 35. Absent such authority, Defendant's proposed duration of approximately 4-5 hours is reasonable. See

1  Simonelli v. University of California-Berkeley, 2007 WL 1655821, at *3 (N.D. Cal. June 4,

2  2007) (finding that "the interests of both parties in the examiner's arriving at an accurate

3  diagnosis militates against setting an artificially short time limit on Plaintiffs examination.").

4      **6.    Reasonable Breaks**

5          Plaintiff argues that she should be allowed reasonable breaks as often as needed during

6  the examination. There is limited case law regarding this particular issue. However, two

7  district courts in the Ninth Circuit have ordered mental examinations that allow reasonable

8  breaks. See Kuhn v. Washington State Dept. of Social and Health Services, 2010 WL

9  3220109, at *9 (W.D. Wash. Aug. 9, 2010) (ordering the inclusion of reasonable breaks to

10  alleviate eye strain and fatigue, but not allowing for lunch or other breaks); Barsamian v.

11  City of Kingsburg, 2008 WL 2168982, at *6 (E.D. Cal. May 22, 2008) (permitting

12  reasonable breaks at the Doctor's discretion). In accordance with precedent, the court shall

13  permit reasonable breaks at the discretion of Defendant's examiner. However, lunch or other

14  breaks are not permitted.

15      **7.    Inadmissibility of Evidence Obtained In Violation of Order**

16          Plaintiff contends that any evidence Defendant acquires in violation of the Court's

17  Order be inadmissible in any form at trial. As with any other kind of discovery, FRCP

18  37(b)(2)(A) permits a court to impose sanctions upon a party for failing to obey a discovery

19  order. "If a party or a party's officer . . . fails to obey an order to provide or permit discovery,

20  including an order under Rule . . . 35 . . . the court where the action is pending may issue

21  further just orders . . . includ[ing] . . . introducing designated matters in evidence," among

22  other sanctions. FRCP 37(b)(2)(A). Therefore, the Court finds it unnecessary at this time to

23  prospectively rule on the range of potential sanctions should Defendant violate the spirit and

24  intent of this Order.

25      **8.    Competent Expert**

26          Plaintiff argues that the examination be done by a competent expert. The Court notes

27  that Plaintiff has not objected to Dr. Mark Kalish's qualifications nor claimed that he is not

28

a "suitably licensed or certified examiner." <u>See</u> FRCP 35(a)(1). Therefore, Dr. Mark Kalish shall perform the IME of Plaintiff.

**9. & 10.       Copy of Results**

Plaintiff contends that any findings be reduced to writing and that all test results and data answers be provided to Plaintiff's attorney. FRCP 35(b) states that "[t]he party who moved for the examination must, on request, deliver to the requester a copy of the examiner's report, together with like reports of all earlier examinations of the same condition. The request may be made by the party against whom the examination order was issued or by the person examined. FRCP 35(b)(1). Therefore, Plaintiff is entitled to request a copy of the examiner's report upon completion of the IME. The Court finds that an additional mandate to turn over documentation of the IME is redundant and unnecessary.

## IV. <u>RULING</u>

After careful consideration, the Court concludes that the Defendant has met its burden of showing that Plaintiff's mental condition is "in controversy" and that there exists "good

09CV1925

1   cause" for the IME. Therefore, the Court **GRANTS** Defendant's Motion to Compel The

2   IME of Plaintiff.

3        On or before <u>July 17, 2013</u>, **PLAINTIFF IS ORDERED** to submit to an Independent

4   Mental Examination.

7   DATED:  July 3, 2013

9   _____
    Hon. William V. Gallo
10   U.S. Magistrate Judge

09CV1925